**In re James A. WITTENBURG,
Sr., Debtor.**

**Terry E. SMITH, Trustee, Plaintiff,**

**v.**

**Harold MULNIX and Marion
Mulnix, Defendants.**

**Bankruptcy No. 89–2830–8P7.
Adv. No. 89–324.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 21, 1990.

---

Stephen L. Meininger, Tampa, Fla., for plaintiff.

Arthur D. Deckelman, Palm Harbor, Fla., for defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case and the matters under consideration are claims set forth in a five-count Complaint filed by Terry E. Smith (Trustee), the duly appointed and acting Trustee in charge of the administration of the estate of James A. Wittenburg, Sr. (Debtor). The matters presented for this Court's consideration are Motions for Summary Judgment filed by both the Plaintiff and the Defendants, who agree that there are no genuine issues of material fact, and that the respective contentions of the parties can be resolved as a matter of law. The record confirms that there are no genuine issues in dispute concerning the material facts which can be summarized as follows:

By virtue of a Last Will and Testament executed by L.J. Novak, who died in 1959, the Debtor inherited a one-half interest in the estate of the Testator. The will was duly probated in 1959 and, in essence, created a trust to provide for support of the Testator's wife during her lifetime with the remainder to be shared equally between the Debtor and his cousin. At the time the will was probated, the estate consisted of two large tracts of land located in Woodruff County, Arkansas. Although it is not clear from the record, it appears that the Commercial National Bank of Little Rock, Arkansas (Bank) was named as trustee for the testamentary trust known as the L.J. Novak Trust.

It appears that, sometime in 1981, the land was sold to Kenneth Canfield, who executed a promissory note and mortgage to secure the unpaid balance of the purchase price. The note was an installment note which required Canfield to make

monthly payments to the Bank until 1995. It appears that Canfield made payments to the Bank who, in turn, distributed the proceeds to the Testator's widow during her life and, afterwards, to the Debtor and to the Debtor's cousin. On December 17, 1986, the Bank as trustee assigned the interest in the Canfield note and mortgage to the Debtor and to his cousin as tenants in common, which conveyance effectively terminated the trust. This Assignment of Note and Interest was duly recorded with the Clerk of the Chancery Court in and for Woodruff County, Arkansas on January 2, 1987.

On November 26, 1986, while the trust was still in existence, the Debtor purchased an auto service and parts retail establishment from the Defendants. As part of this transaction, the Debtor executed a note in favor of the Defendants and granted a security interest in all of the business assets purchased by the Debtor. In addition, the Debtor executed a document entitled, "Assignment of Interest" which purported to assign his interest in the Canfield note and mortgage which, at that time, was held by the Bank as trustee pursuant to the Last Will and Testament of L.J. Novak. The pertinent part of the Assignment reads as follows:

> This Assignment will be operative only after all other security for the said note and first mortgage has been exhausted.

The assignment did not prevent the Debtor from using the funds received from the Bank during the existence of the trust, nor after the monies received from Canfield after the trust was terminated. The fact of the matter is that it is very likely that the Debtor continued to receive his share of the payments made by Canfield on the note and mortgage and, as far as it appears, is quite possible that he is still receiving his share, notwithstanding the intervention of the bankruptcy. The only restriction placed on his right to enjoy the benefits of his interest in the Canfield note and mortgage was a provision which required that the value of his interest in the note and mortgage should at no time be less than the offsetting balance owed by him to the Defendants. Although the Con-

tract of Purchase and Sale executed in November of 1986 by the Defendants as sellers and the Debtor as a buyer makes a reference to a security agreement in the financing statement (Exh. E to Defendants' Motion for Summary Judgment), there is nothing in this record to indicate that either the security agreement or the financing statement makes any reference specifically to any part of the Debtor's interest in the L.J. Novak trust and/or the Canfield promissory note and mortgage.

It should be noted in this connection that Paragraph 9 of the Last Will and Testament of L.J. Novak provides:

> Any payment or payments of either income or principal from my residuary estate hereinbefore directed to be made to my beneficiaries hereinbefore named, *shall not be subject to debts, engagements, auticipation [sic] or alienation of my beneficiary or beneficiaries, nor shall same be subject to judgment, attachement [sic] or other process of law at the hands of anyone whomsoever.* (emphasis supplied)

The "Assignment of Interest" executed by the Debtor on November 26, 1986, was executed before the Debtor and the Debtor's cousin acquired the interest in a note and mortgage from the Trustee. Thus, it is clear that, at the time he assigned the interest, he had no interest whatsoever in the note and in the mortgage, except a possible future residual interest, albeit contingent upon the possibility that upon the death of the Testator's widow, there are still properties remaining in the trust, and upon any ultimate shortfall which might occur after the Defendants liquidated all their collateral in the event of a default by the Debtor.

The Debtor ultimately defaulted on his obligation to the Defendants and the Defendants filed an action to foreclose the mortgage and the "security interest" in the Canfield note and mortgage. The Amended Final Judgment of foreclosure of the mortgage and Order of Sale was entered on January 27, 1989. The Amended Final Judgment of Foreclosure foreclosed the interest of the Debtor in real estate specifi-

cally described in the Final Judgment, and the Debtor's interest in its equipment, inventory and product line listing. There is nothing in the final decree of foreclosure and Order for Sale entered on June 27, 1989, which made any mention of the Defendants' interest, if any, either in the L.J. Novak trust, which, by the way, at that time was no longer in existence, having been dissolved, or in the Canfield note or mortgage.

In due course, the sale was scheduled and held, at which time the Defendants were the successful bidders and purchased all their collateral, but not the note and the mortgage. Thereafter, the Defendants sought a deficiency judgment and on April 24, 1989, the Circuit Court entered a Deficiency Judgment in the amount of $117,641 plus attorneys fees and costs. In addition, the Circuit Court also decreed that:

2. The Plaintiffs, HAROLD MULNIX and MARIAN MULNIX, his wife, be and the same are hereby subrogated to and entitled to the collateral securing that certain First Mortgage on the subject matter property held by AmeriBank-Oldsmar, in the amount of SIXTY–NINE THOUSAND SEVEN HUNDRED TWENTY–SEVEN AND 64/100 DOLLARS ($69,727.64), which collateral is represented by the Assignment of Interest executed by the Defendant, JAMES A. WITTENBURG, SR., in favor of the plaintiffs, HAROLD MULNIX and MARIAN MULNIX, his wife.

3. The Court retains jurisdiction of this cause to determine costs and attorney's fees for the matters related to the obtaining of this Final Judgment of Deficiency.

The Debtor filed his Petition for Relief under Chapter 7 in this court on April 27, 1989, three days after the Deficiency Judgment was entered by the Circuit Court. Terry E. Smith was appointed as Trustee of the estate of the Debtor, and on July 27, 1989, he filed a five-count Complaint. The substance of the Complaint filed by the Trustee may be summarized as follows:

Count I claims that a certain Final Judgment of Deficiency entered on April 24, 1989, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, was legally ineffective to convey any interest to Harold and Marion Mulnix, the Defendants named in the Complaint in that the Defendants did not obtain a writ of execution or writ of garnishment, thus, no judgment lien attached to a certain promissory note in which their interest is the crux of the controversy. The Trustee contends in Count I that, by virtue of § 544 of the Bankruptcy Code, a claimed judicial lien is void against the Trustee. The claim in Count II is based on § 547 of the Bankruptcy Code and, according to the Trustee, the entry of the judgment referred to earlier, if it did create a lien, was a voidable preference in that the Final Judgment entered in the state court, if it operated as a transfer, did occur within 90 days on account of an antecedent debt and since all other operating elements of a voidable preference are present, the Trustee is entitled to a declaration that his interest is superior to any interest of these Defendants. The claims set forth in Count III were also based on § 547 by the contentions that the transfer was a certain "assignment of interest" which became operative only within 90 days and, therefore, could be avoided by the Trustee for the preferential transfer.

The claim asserted by the Trustee in Count IV is based on the contention that the certain "Assignment of Interest" purported to grant the security interest in the proceeds of that certain trust referred to as the "L.J. Novak Trust", since the only way to perfect the security interest by the Trustee is to file a financing statement.

The last claim set forth in Count V contends that "the trust referred to as L.J. Novak trust" became a promissory note [sic], and inasmuch the note can only be perfected by profession or by filing a financing statement pursuant to *Fla.Stat.* § 697.304(1) or *Fla.Stat.* § 679.305, the Trustee as an ideal judgment creditor would defeat that interest pursuant to § 544 of the Bankruptcy Code.

On May 4, 1989, Defendants filed a Motion which sought relief from the automatic

stay in order to be permitted to proceed to enforce the Deficiency Judgment entered by the Circuit Court on April 24, 1989. On June 23, 1989, this Court entered an Order granting the Motion for the limited purpose of permitting the parties to obtain a clarification from the Circuit Court of its Final Judgment of Deficiency entered on April 24, 1989. The Motion for Clarification sought a determination whether or not the one-half interest of the Debtor in the L.J. Novak trust became the property of the Defendants as of November 26, 1986, on which date the document entitled, "Assignment of Interest" was executed. After hearing was held on September 5, 1989, the Circuit Court entered an order on the Motion for Clarification, in which it held that the Defendants became the absolute owners by virtue of an absolute assignment of the Canfield note and mortgage as of November 26, 1986, the date the "Assignment of Interest" was executed.

These are the salient facts which, according to both the Plaintiff and the Defendants, entitle them to summary judgment as a matter of law.

From the foregoing, it is clear and this Court is satisfied that the issues raised by the Plaintiff and the Defendants cannot be resolved without an in-depth analysis of the legal effect of the "Assignment of Interest" executed by the Debtor on November 26, 1986, and without a proper analysis of the legal effect of the Final Judgment of Deficiency entered by the Circuit Court on April 24, 1989, and the Order on the Motion for Clarification entered pursuant to the hearing held on September 5, 1989. Resolution of these matters also requires determination of the legal effect of an intervention of bankruptcy, and the specific voiding powers according to the Trustee in bankruptcy by the Bankruptcy Code.

Considering first the legal effect of the "Assignment of Interest", this Court is satisfied that it was nothing more than an attempt to grant a conditional security interest in the Canfield note and mortgage for the limited purpose of providing additional collateral to secure the indebtedness owed by the Debtor to the Defendants as a result of the purchase of the automotive parts and service business. Moreover, even if the "Assignment of Interest" attempted to create a present right in the Canfield note and mortgage, it was ineffective totally because on the date the "Assignment of Interest" was executed, the Debtor had no interest in the Canfield note and mortgage. It is axiomatic that a security interest vested cannot attach in the collateral until the debtor acquires interest in the collateral. *Fla.Stat.* § 679.204[1]. Of course, it is evident from the plain language that the document executed by the Debtor was nothing more than that a condition of security interest created no valid and enforceable interest until it was determined that the Defendants were not able to obtain full satisfaction of the obligation owed to them by the Debtor from the liquidation of other collateral which they had. It is equally clear that no enforceable interest could be created in a mortgage unless the assignment of the mortgage is properly recorded in the public records in the county where real estate conveyances are recorded.

There is no dispute that in this particular instance, the Defendants never had possession of the note and it is equally without dispute that this "Assignment of Interest" was never recorded in the public records of Woodruff County, Arkansas. Even assuming, but not admitting, that the Defendants acquired a present interest in the Canfield note and mortgage by virtue of the "Assignment of Interest" by the Debtor, there is hardly any question that such interest could not survive bankruptcy simply because the special voiding power accorded to a trustee by § 544(a) of the Bankruptcy Code would grant the Trustee a right superior to the right of the Defendants due to lack of perfection of their interest in the Canfield note and mortgage.

Based on the foregoing, this Court is satisfied that the Defendants did not acquire a valid and enforceable interest in the Canfield note and mortgage by virtue of the "Assignment of Interest" or, in the alternative, even if they did, such interest is inferior to the interest of the estate.

This leaves for consideration whether or not these Defendants did acquire for the first time a valid and enforceable interest in the Canfield note and mortgage when the Circuit Court entered the Final Deficiency Judgment on April 24, 1989, or three days prior to the commencement of the bankruptcy case. Assuming, without admitting, that Paragraph 2 of the Final Deficiency Judgment which purported to "subrogate" the Defendants to the collateral described in the "Assignment of Interest" did create for the first time a valid enforceable interest in the Canfield Note and Mortgage in favor of the Defendants. Accordingly, the entry of the Final Deficiency Judgment was clearly a transfer, albeit by judicial fiat, within the meaning of the term "transfer" as defined by § 101(50) of the Bankruptcy Code.

This being the case, the transfer occurred within 90 days of the commencement of the case and by virtue of § 547(f) the Debtor was presumed to be insolvent absent of any countervening proof which is nonexistent in this instance, this transfer is a voidable preference under § 547(b) of the Bankruptcy Code.

The matter is further complicated however, by the fact that after the commencement of a case, this Court authorized the parties to go back to the Circuit Court in order to obtain a clarification of a provision of the Final Judgment of Deficiency which purported to "subrogate" the Defendants. The reason this Court authorized the parties to seek a clarification of this paragraph is because it is impossible to determine from this Paragraph 2 to whom the Defendants were subrogated and what was the intent of the Circuit Court concerning these Defendants' right to the collateral described in the "Assignment of Interest". This provision provides specifically in Paragraph 2 as follows:

2. The Plaintiffs, HAROLD MULNIX and MARIAN MULNIX, his wife, be and the same are hereby subrogated to and entitled to the collateral securing that certain First Mortgage on the subject matter property held by AmeriBank–Oldsmar, in the amount of SIXTY–NINE THOUSAND SEVEN HUNDRED TWENTY–SEVEN AND 64/100 DOLLARS ($69,727.64), which collateral is represented by the Assignment of Interest executed by the Defendant, JAMES A. WITTENBURG, SR., in favor of the plaintiffs, HAROLD MULNIX and MARIAN MULNIX, his wife.

The difficulty arises from the fact that the Circuit Court in the Order of Clarification, rather than clarify the provision dealing with the subrogation, provided that one-half interest of a Debtor in the L.J. Novak trust became the property of the Defendants retroactively as of November 26, 1986, the date on which the "Assignment of Interest" was executed.

The Order of Clarification purported to vest in the Defendants absolute ownership of the Canfield note and mortgage in spite of the fact that, as noted earlier, the "Assignment of Interest" never purported to convey ownership of the Canfield note and mortgage, but merely attempted to create a conditional security interest to be operative only after the Defendants exhausted all the other collaterals in which they had an interest. Moreover, the Final Judgment of Foreclosure and the Order for Sale did not foreclose the Debtor's interest in the Canfield note and mortgage, and the Defendants did not purchase any interest at the foreclosure sale of the Canfield note and mortgage. Accordingly, on the date of the commencement of this Chapter 7 case, the Canfield note and mortgage was property of the estate possibly only subject to an interest created by the entry of the Final Deficiency Judgment entered by the Circuit Court on April 24, 1989, which interest, as noted earlier, is voidable as a preference pursuant to § 547 of the Bankruptcy Code. It is evident and axiomatic that the rights of the parties, vis-a-vis, the estate of the Debtor, are determined as of the date of the commencement of the case. Thus, it is a legal impossibility to acquire ownership in properties of the estate postpetition even by a judicial fiat entered postpetition when such ownership clearly did not exist on the date of the commencement of the case.

■ Based on the foregoing, this Court is satisfied that to the extent the Order of Clarification purported to vest in the Defendants absolute ownership of the Canfield note and mortgage, which might have created outside of the bankruptcy a valid, enforceable interest, it could not have any legal effect on the estate's interest in the Canfield note and mortgage.

Thus, in the last analysis, this Court is satisfied that the claim of the Defendants to the Canfield note and mortgage is inferior to the interest of the estate and since there are no genuine issues of material facts, the Trustee is entitled to judgment as a matter of law.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by the Trustee be, and the same is hereby, granted, and a separate Final Judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.